**NATIVE ANGELS HOME HEALTH, INC., Plaintiff,**

**v.**

**Sylvia Mathews BURWELL, In Her Capacity as Secretary of the United States Department of Health and Human Services, Defendant.**

No. 5:15–CV–234–FL.

United States District Court, E.D. North Carolina, Western Division.

Signed June 23, 2015.

Brian M. Daucher, Sheppard Mullin Richter & Hampton LLP, Costa Mesa, CA, Craig Hensel, Hensel Law, PLLC, Greensboro, NC, for Plaintiff.

Joshua B. Royster, U.S. Attorney's Office, Neal Fowler, U.S. Department of Justice, Raleigh, NC, Defendant.

## ORDER

LOUISE W. FLANAGAN, District Judge.

This matter comes before the court on plaintiff's motion for preliminary injunction. (DE 4). The issues raised have been briefed fully and the parties have been heard at oral argument. In this posture, plaintiff's motion is ripe for ruling. For the reasons stated below, plaintiff's motion for preliminary injunction is denied.[1]

## BACKGROUND

As provided in the complaint, plaintiff, a home health agency located in Fayetteville, North Carolina, and current participant in the federal Medicare program, seeks a court order enjoining defendant from revoking its Medicare billing privileges. (Compl., DE 1, ¶¶ 4, 13–14). On or about May 6, 2015, defendant issued a letter informing plaintiff that defendant was revoking plaintiff's Medicare billing privileges, effective June 5, 2015. (Id. ¶ 4). The decision to revoke plaintiff's Medicare billing privileges was made without a hearing. Plaintiff contends defendant's actions

---

1. Also at hearing June 23, 2015, the court considered whether the government's failure timely to comply with the terms of the court's temporary restraining order entered June 4, 2015, subject it to a contempt finding. For reasons set forth on the record, the court declined to find the government in contempt.

violate due process in the absence of a pre-deprivation hearing.

On June 4, 2015, the court entered order granting plaintiff a temporary restraining order, and thereafter, on June 11, 2015, at which time the instant motion for preliminary injunction was noticed to be heard, extended that order.[2] The government's inability substantively to address the issues presented June 11, 2015, on motion for preliminary injunction, resulted in continuation of this hearing until today, during which time plaintiff enjoyed the protection of the extended restraining order.

## COURT'S DISCUSSION

### A. Standard of Review

 To obtain a preliminary injunction, plaintiff must make a "clear showing" "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Injunctive relief is an "extraordinary remedy" and to obtain it, plaintiff must satisfy each of the four factors. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (2009), *vacated* 559 U.S. 1089, 130

S.Ct. 2371, 176 L.Ed.2d 764, *reinstated in pertinent part* 607 F.3d 355 (2010).

### B. Analysis

 It is not likely plaintiff will prevail on the merits of its underlying procedural due process claim because due process does not require a pre-deprivation hearing where a Medicare *provider* is stripped of its billing privileges.[3] When a party asserts a violation of the Fifth Amendment's Due Process Clause, the court "pose[s] two questions..... '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures, attendant upon that deprivation were constitutionally sufficient.'" *United States. v. Al–Hamdi*, 356 F.3d 564, 574 (4th Cir.2004) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted)). The court will assume plaintiff has a liberty or property interest in its Medicare billing privileges, and thus turns to the constitutional sufficiency of the process which plaintiff has been afforded.

As noted, plaintiff was not afforded a pre-deprivation hearing. However, that is not to say that plaintiff was provided no process at all. To the contrary, plaintiff was afforded the opportunity to submit a

---

**2.** After hearing, conducted June 11, 2015, the government presented plaintiff with a formal notice of rescission, referencing the notice plaintiff received dated May 6, 2015, revoking its Medicare privileges effective June 5, 2015, which is at the heart of its complaint. While reversing its decision, in its June 11, 2015, notice, the government expressly reserved its rights to proceed in the future. At hearing, plaintiff, through counsel, conceded that its Medicare billing privileges have been reinstated but nevertheless argued a preliminary injunction is appropriate because defendant has reserved the right to "conduct further inquiry" and "take any action ... determine[d] to be appropriate." (June 11, 2015, letter, DE

20–7). Defendant's reservation of rights, plaintiff contended at hearing, warrants injunctive relief compelling defendant to afford plaintiff a pre-deprivation hearing should she choose to revoke plaintiff's Medicare billing privileges sometime in the future.

**3.** At hearing, plaintiff analogized the facts of this case to *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Despite both cases arising in the Medicare context, their dissimilarities far outweigh their similarities. Most critically, the *Eldridge* plaintiff was a Medicare *recipient. Id.* at 323, 96 S.Ct. 893.

"corrective action plan" prior to implementation of defendant's decision rescinding its Medicare billing privileges. 42 C.F.R. § 405.809. In addition, plaintiff was afforded the opportunity to take advantage of an expedited administrative appeal process, which culminates in judicial review, after its billing privileges had been rescinded. *See* 42 U.S.C. § 1395cc(h).

 To determine whether a process is constitutionally sufficient, the court must weigh three factors: 1) the private interest to be affected by the action; 2) the risk of erroneous deprivation of that interest through the procedures that were used, and the probable value of added procedures; and 3) the government's interest, including the fiscal and administrative burdens of added procedures. *Al–Hamdi,* 356 F.3d at 575 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

The "private interest" at stake is not substantial. Although plaintiff "plays a virtually indispensable role in the administration of Medicare Benefits, [it] is not the intended beneficiary of the Medicare Program." *Northlake Cmty. Hosp. v. United States,* 654 F.2d 1234, 1242 (7th Cir.1981). Plaintiff's financial need is only "incidental" to the purpose of the Medicare program, and "is not of constitutional significance." *Id.; see also Town Ct. Nursing Ctr. v. Beal,* 586 F.2d 266, 277 (3d Cir. 1978); *Case v. Weinberger,* 523 F.2d 602, 607 (2d Cir.1975).

Turning to the second and third *Eldridge* factors, the risk of erroneous deprivation of plaintiff's economic interest through the currently afforded process is low. The regulations afford plaintiff the ability to take corrective action prior to termination of its Medicare billing privileges. Moreover, because defendant's determination is based on defined criteria the need for a hearing is lessened where defendant can make determinations based on documentary evidence. *See Northlake Cmty.,* 654 F.2d at 1242. Finally, the government has a high interest in not conducting pre-deprivation hearings. These hearings would lead to additional administrative expense; would delay defendant's ability to enforce her valid regulations, promulgated pursuant to the Medicare Act to the detriment of the public; and would lead to additional expenses, incurred in the form of reimbursements paid as Medicare benefits to plaintiff. Thus, on balance, the factors weigh heavily against plaintiff, and it cannot show a likelihood of success on the merits of its procedural due process claim.

In addition, in the specific context of this case, courts typically have held that pre-deprivation hearings are not required to satisfy procedural due process. *See Varandani v. Bowen,* 824 F.2d 307, 309–10 (4th Cir.1987) (holding physician not entitled to hearing prior to termination in a medicare program under *Eldridge* ); *see also Cathedral Rock of N. College Hill, Inc. v. Shalala,* 223 F.3d 354, 364–65 (6th Cir.2000); *Northlake Cmty.,* 654 F.2d at 1241–43; *Beal,* 586 F.2d at 279–80; *Marion Nursing Ctr., Inc. v. Sebelius,* No. 4:13–CV–2953, 2013 WL 6019322 (D.S.C. Nov. 13, 2013).

In *Varandani,* the Fourth Circuit rejected a physician's procedural due process claim, grounded in a deprivation of a liberty interest, the doctor's good reputation, accruing from termination of his Medicare reimbursement privileges. *Varandani,* 824 F.2d at 310–11. The court held that an informal pre-termination hearing satisfied due process and that the government's compelling interest in assuring safe health care for the public, as well as avoiding the extra costs associated with a full pre-deprivation hearing, allowed the government to grant plaintiff fewer pre-deprivation protections. *Id.* at 311.

In the case at bar, plaintiff was given the opportunity to submit a corrective action plan prior to the termination of its billing privileges. As discussed, this opportunity, in light of the added value of additional processes and the burden additional processes would place on the government, likely is all the process plaintiff was due.

█ Plaintiff similarly has not shown a likelihood of success on the merits of its substantive due process claim. "Unlike rights subject to procedural due process protection, which arise from sources other than the Constitution, substantive due process rights arise solely from the Constitution." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1142 (4th Cir.1990) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229–30, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)). Here, plaintiff has failed to allege the deprivation of any right flowing directly from the Constitution. Therefore, it also has not shown a likelihood of success on the merits on this claim. A finding that plaintiff is unlikely to succeed on the merits of its underlying claim ends the court's inquiry, as all four of the factors articulated in Winter must be met to warrant a preliminary injunction. *See Real Truth*, 575 F.3d at 346.

█ With respect to any future injury, plaintiff lacks standing to assert any claim for deprivation of due process accruing from a revocation of its billing privileges that has yet to occur.[4] The court is "not at liberty to resolve every grievance over government policy, no matter how significant, for Article III of the Constitution confines the federal courts to adjudicating actual cases and controversies."

*Doe v. Obama*, 631 F.3d 157, 160 (4th Cir.2011) (citing *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)) (internal quotations omitted). Standing is an essential element of the case-or-controversy requirement. *Id.* To meet the standing requirement, plaintiff must demonstrate: 1) it has suffered an injury in fact; 2) the injury fairly may be traced to the challenged action of defendant; and 3) it is likely that the injury will be redressed by a favorable decision. *See id.* An "injury in fact" is one that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Id.*

Plaintiff has failed to satisfy the "injury in fact" requirement because any injury sustained as a result of defendant's reservation of the right to again revoke plaintiff's Medicare billing privileges is "too abstract" to be judicially cognizable. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir.2000). At this point, there has been no actual deprivation of due process and plaintiff cannot show defendant likely will deprive it of due process in the future.

The speculative nature of plaintiff's injury is bolstered by the preceding discussion of plaintiff's likelihood of success on the merits. In light of plaintiff's purely financial interest, the low likelihood of erroneous deprivation, and the substantial administrative and financial difficulties that a pre-deprivation hearing would impose on the government, plaintiff likely would not be "injured" if the government deprived it of its Medicare billing privileges without prior benefit of hearing. Accordingly, plaintiff lacks standing to assert a due

---

4. This harkens back to plaintiff's acknowledgment at hearing that no administrative action related to any revocation of its Medicare privileges now is pending. Plaintiff elaborated on a scenario where, given its billing procedures are the subject of a review process ongoing, the heightened scrutiny it faces makes it more likely that defendant will, in the future, seek to revoke its privileges.

process claim grounded in future revocations of its Medicare billing privileges without a pre-deprivation hearing.

## CONCLUSION

Based on the foregoing, plaintiff's motion for preliminary injunction is DENIED. The court's temporary restraining order hereby is dissolved.